### GROSVENOR and others *vs.* ALLEN and others.

A made a contract with B for the erection of certain buildings by B for A, for which, when completed, A was to convey to B certain leasehold property. A, by a revocable power bearing even date with the contract, permitted B to go into possession of the leasehold property. He did so, and made valuable erections thereon, and afterwards failed, and made an assignment of all his property for the payment of his debts. Before his failure, C recovered a judgment against B, and sold thereon these leasehold premises. After B's failure, his assignees settled with A concerning the building contract, and took from him an absolute conveyance to themselves as assignees of the leasehold property.—Held, that C's judgment was not a lien upon the leasehold property, and that a conveyance thereof by the assignees of B, vested a good title in the purchaser free from the lien of C's judgment.

B, in such case, is to be considered as the purchaser of lands by contract, the interest in which is only to be reached by a judgment creditor after a return of an execution unsatisfied, and previous to that time B had made a valid conveyance, and consequently a creditor's bill would not reach it.

Judgment creditors obtain a lien by process of law, and they must take what the law gives them; and, independent of fraud or contrivance, they can take nothing beyond.

July, 1840.

Grosvenor
and others
v.
Allen and
others.

SAMUEL WILKINSON being the assignee and owner of a leasehold estate in the city of Buffalo, on the 20th November, 1834, entered into an agreement with Benjamin Rathbun, by which Rathbun was to erect certain buildings for Wilkinson, and for the erection thereof was to be paid the sum of $9,000, by an assignment of the leasehold property.

By a power revocable at the pleasure of Wilkinson, Rathbun was permitted to go into possession of the leasehold property. This power bore even date with the contract or agreement. Rathbun did go into possession of the leasehold property, and made valuable erections thereon. On the 1st of August, 1836, David E. Evans recovered a judgment against Rathbun. On the 3d of August, 1836, Rathbun made a general assignment for the benefit of his creditors. The judgment in favor of Evans was assigned to the complainants. No actual assignment of the leasehold estate was ever made by Wilkinson to Rathbun before his failure; and the defendants insist that Rathbun had not, at the time of his failure, completed his contract with Wilkinson by the finishing of the buildings which he had contracted to erect. After Rathbun's failure, his assignees settled with Wilkinson in relation to this contract, and took from Wilkinson a conveyance to themselves of the leasehold estate. Subsequently, the complainants caused the same leasehold estate to be sold under an execution issued upon their judgment, which was, on such sale, bid in for the benefit of the complainants, for $16,000.

Rathbun's assignees sold the same estate to the defendant Orlando Allen, for $17,000, who executed a mortgage to the assignees for the payment of the

same, under the stipulation or understanding that Allen was to institute legal proceedings to settle the title to the property. Allen did file a bill for that purpose, against the representative of the purchaser at the sheriff's sale, which was answered without oath, and which bill has since been amended by making others parties. Allen is in possession of the property and the receipt of the rents. This bill is filed as in nature of a cross bill, claiming the property under the sheriff's sale. Upon filing the bill, an injunction was allowed, restraining Allen from the receipt of the rents. A motion is now made for the dissolution of this injunction.

*E. S. Warren*, for complainants.

*N. K. Hall*, for defendants.

THE VICE CHANCELLOR. The question which seems to have been intended to be presented here, and the decision of which will probably dispose of both suits, is, whether the judgment owned by the complainants is a legal or equitable lien upon the interest of Rathbun in the leasehold estate, so that a sale under it would convey a title, either in law or equity, to the purchaser. To decide this, we must look at Rathbun's interest in this estate at the time of the rendition of the judgment. In November, 1834, he had contracted with Wilkinson to erect for him a block of buildings, for which Wilkinson was to pay him $9,000 in manner following, viz. " he agrees to assign and transfer to him (Rathbun) a lease," &c. (meaning the leasehold property.) Simultaneously, Wilkinson executes to Rathbun a power to go into possession of the premises, revoca-

ble at the pleasure of Wilkinson. Now if these in-instruments, either of them or both of them together, amount to a legal conveyance of the property to Rathbun, then is the judgment a lien, and the complainants in this suit must prevail. But I do not so construe this contract. The agreement set up in the bill is, in effect and to all intents, a contract on the part of Rathbun to erect for Wilkinson a block of buildings, upon the completion of which he was to be paid the sum of $9,000. The mode of payment was to be by an assignment of the leasehold premises. If the payment was to be made in cash, there can be no doubt but Rathbun, before he could recover the money, would have to prove the performance on his part. And though the payment is to be made by an assignment of a specific piece of property, still he could not come into court to enforce a specific performance of that contract, without averring and proving that it was fully performed on his part. It is true that Wilkinson gave Rathbun possession of the premises, that is, he gave him a power to go into possession, but this power was revocable at the pleasure of Wilkinson. He thus reserved in his own hands the right of resuming possession, in case Rathbun did not comply with his agreement. All this does not seem to me to amount to any present assignment of Wilkinson's interest in the premises, to Rathbun. It is only a covenant to convey, upon the fulfillment of the agreement on the part of Rathbun; in other words, it is an executory contract or agreement on the part of Rathbun, to take a conveyance of the leasehold premises, as a full compensation for the erection of the buildings; and an agreement on the part of Wilkinson, to convey the said premises

upon the completion of the buildings. This convey-ance was never made. Rathbun had not, at the time of the docketing of the complainants' judgment, a conveyance of these premises: he has not had it since.

The statute (1 Vol. Rev. Stat. 744, Sec. 4) pro-vides that the interest of any person holding a con-tract for the purchase of lands, shall not be bound by the docketing of any judgment or decree, nor sold by execution upon any such judgment or decree. It makes provision, however, for reaching such interest by bill in Chancery.

Previous to the passage of this statute, it was not so. The statute now leaves the interest of a pur-chaser of lands by contract, upon the same footing that it leaves a judgment debtor who owns bonds, notes, or other choses in action. A judgment at law binds neither. An execution can touch neither. A judgment creditor can obtain no lien upon either, until bill filed after the return of his execution unsatisfied. If before such bill be filed, the judgment debtor transfers or assigns his interest in his land contract or his choses in action, a purchaser in good faith will hold it against the judgment creditor. Such I deem to be the plain provisions of the law, and so I under-stand it to be construed by the Chancellor in Talbot *vs.* Chamberlain, 3 Paige, 219. In that case, the Chancellor says that even if the purchaser of lands by contract has paid the whole purchase money, but has not yet acquired the legal title, a judgment against him is no lien upon such lands.

In this case, I deem Rathbun to stand in the light of a purchaser of lands by contract; and inasmuch as no conveyance of the lands specified in the con-

tract has ever been made to him, the judgment of the complainants could not attach upon them as a lien, neither could they be sold upon an execution issued upon such judgment. The complainants' only remedy was to file a bill under the other provisions of the statute. A valid conveyance has been made by Rathbun before this has been done: the assignees of Rathbun have acquired a valid title to the leasehold premises and, conveyed them by a valid agreement to the defendant Allen, and he can rightfully hold them.

The complainants, however, insist that if they have not a legal lien upon the premises, they have an equitable lien by virtue of their judgment, and the knowledge that the defendants had of the fact of the existence of such judgment.

Equities generally arise between contracting parties and their privies. Judgment creditors generally hold by virtue of their judgment. They come in through the process of law, and they must take what the law gives them. There might have been equities as between Wilkinson and his assigns and Rathbun and his assigns. But the complainants here stand in the place of neither of the contracting parties—they are assignees of neither. They came in by virtue of their judgment, and they must take what the law gives them as the fruits of their judgment. If the similitude between lands held by contract and other equitable assets or choses in action, is correct, the complainants might with just the same propriety insist that their judgment constituted an equitable lien upon all the choses in action which Rathbun had at the time of its rendition. Such an idea has never been entertained even as against a purchaser of a chose in action, with notice of the judgment.

In relation to all these interests, land contracts, <span>Aug. 1840.</span> notes, bonds, &c. the law favors the vigilant. The first judgment creditor, even if it be the youngest, who files his bill, acquires the first lien. And as to such matter, it is the filing of the bill, and the filing of the bill alone, which creates the lien.

If either of these equitable interests are transferred by the judgment debtor *bona fide,* before the filing of such bill, the bill does not reach it. A transfer for the benefit of creditors, is a *bona fide* transfer, and for a good consideration. The creditors acquire rights by it ; and from all I can see in this case, they are entitled to the avails of the sale *to* Allen ; for this is, after all, a contest between the complainants and the creditors of Rathbun. The injunction must be dissolved with $10 costs.